I am informed that all parties are here, so I will turn to the calendar, Brooklyn Center for Psychotherapy versus the Philadelphia Indemnity Insurance Company. You may proceed. Thanks. You may proceed. May it please the Court? I'm Michael Hrelchek for Brooklyn Center for Psychotherapy. Our basic argument here is simple. It's that the plaintiff in the underlying case here, Ms. Goldman, on the basis of the complaint as pleaded, could have prevailed on her failure to accommodate claims without ever proving any intentional discrimination, and we believe that's enough to bring this within the policy's coverage. Now clearly the complaint does also include allegations of intentional discrimination, but we believe that's not the relevant factor. The factor is whether there is any claim, allegations supporting any claim in the complaint that are within the policy's coverage, and we believe that there are. The policy does not cover intentional discrimination. Is that correct? Yes. Yes. Yes. Intentional discrimination, so disparate treatment claims, would not be covered under this policy. And that's what we have here, right? Well, no, so the complaint pleads failure to accommodate theory. Now there are also allegations of intentional discrimination, and it's, to be blunt, it's not the most artfully pleaded complaint. We think that the plaintiff under this complaint probably could have proceeded under both a disparate treatment theory and a failure to accommodate theory, but there are very clear, it very clearly does plead failure to accommodate. And if it's mixed, your argument is that that should be covered because part of it would be arguably accidental. Yes. We think as just a black letter New York insurance law, if there is any covered claim, then it is covered under the policy for purposes of insurance defense. If there is a single covered claim, then the duty to defend attaches. And how are we to look at that? Is it by some certain acts were arguably not intentional and some were, or is it by the claims that there is a deliberate and an unintentional, or how are we to? I think it would be, are there allegations sufficient to state a claim for the non-intentional cause of action that would be covered by the policy? So in this complaint, there are various allegations, basically that the plaintiff was denied certain accommodations and as a result of the denial of those accommodations was unable to access the services. And that states a claim for failure to accommodate, which we believe will be covered under the policy. And that's enough, regardless of whether there are also allegations that would more sound in disparate treatment, which would not be covered by the policy. Does it matter? I was a little perplexed by some of the New York cases as to whether we are to look to the causes of action or to the factual allegations to figure that out. Because the factual allegations here don't seem to be ones that are directly charged. It's not just a throwaway line that there was deliberate discrimination against the handicapped. There was a factual recitation that seemed to support that rather than some claim that the accommodation just didn't happen for some reason. Right. And I think what's important is that there are also allegations, and part of the issue here is that the plaintiff was clearly proceeding on a failure to accommodate claim and the judges, the lower court recognized that this was a failure to accommodate claim. However, the causes of action, the counts laid out in the complaint didn't distinguish between the particular legal theories. It was all kind of lumped together in a single legal theory. And I think the factual recitation is pretty much, I called up and the first thing they said was, don't expect any accommodations from us and we're not going to give you anything like that. And that she was treated rudely, et cetera, et cetera. Now, those things may be true or maybe not true. But they clearly allege and are intended to allege that what happened here was deliberate discrimination. And I think that that demonstrates an intent to to also have a disparate treatment claim in play in the case. But I think the very fact that there were clear allegations and it was in the accounts it specifically lays out failure to accommodate, that demonstrates an intent also to have a failure to accommodate claim, to litigate that as well. And one thing I would ask is if someone has a, if someone intends to rely solely on intentional discrimination, then what purpose does it serve to include a failure to accommodate claim in their complaint? Otherwise, if they have the disparate treatment allegations and they intend to rely on those intentional actions to prove their case, then the failure to accommodate claim adds nothing to their case. It's just more elements to prove and no benefit for them. But by including a failure to accommodate claim, the purpose of that is to allow them to prevail even if they can't prove intent, even without any proof of intent, they can still proceed. And there are statements in there, for example, that the failure to provide the accommodation, there are allegations that that was a result of a policy by the center. And if that were true, would that be a covered claim? That is to say a failure to I wasn't sure exactly what you mean when you say a failure to accommodate claim does not require intent. I take it it does not require any animus against, in this case, deaf people. If they said, sorry, we just we'd love to have you here and treat your son, but we just can't afford to do this kind of thing. Maybe a court jury might decide that, in fact, they could and it was a reasonable thing that was being asked for and that amounted to a failure, valid failure to accommodate claim. But it was still a deliberate decision not to accommodate. So which right, which do we look to? Yes. And I think I think that's a that's an important point. And when we're looking at intent, this is for purposes not just of discrimination claims, but just the coverage insurance coverage under New York law of intentional torts. You know, what kind of conduct as a matter of public policy or as a matter of policy coverage for occurrences, it's it's not just the mere fact that there were intentional actions, because that's true in a wide range of covered cases, including many types of negligent negligence actions where there are intentional actions that result in some harm. Deliberately speed. That's not you're not deliberately intending to cause any harm and you're negligent and that causes an accident and so on. Exactly. And that's here is where we have we have made the analogy with disparate impact cases where it's I think it's clear under case law and under New York public insurance, public policy that disparate impact claims as opposed to disparate treatment claims, disparate impact claims are covered claims. And because the adoption of a facially neutral policy, which later results in a discriminatory impact that even though it's an intentional adoption of the policy, it didn't the the result into discrimination was not necessarily intended. If failure to accommodate claims fall somewhere in the middle or have attributes of both disparate treatment and disparate impact, and that's not something that New York law is clear on, should we certify the question? So I think that's certainly an option for this court to certify. And I would say that the New York Court of Appeals has not clearly spoken on failure to accommodate claims, but I believe there's enough the New York law just of insurance coverage generally and the law in disparate impact, which we do think is closely analogous, is enough that I think that could guide this court's decision and decide the case. Thank you. You reserve three minutes for rebuttal. Thank you. We will hear from Philadelphia Indemnity Insurance Company. Good morning, Your Honor. May it please the court, Dan Cohane on behalf of Philadelphia. One need only look at paragraph 30 of the complaint of the Goldman complaint, which is in the joint appendix, page 101. And it reads, defendant intentionally discriminated against plaintiff and acted with deliberate indifference to her communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress. And that paragraph is incorporated into each and every cause of action that follows. It doesn't matter whether this, and this goes both to your question, Your Honor, and as well as to Judge Marks, it doesn't matter whether you call this a disparate treatment case, a disparate impact case, or a failure to accommodate a case. What you need to look at are the factual allegations in the complaint. And Judge Lynch, you mentioned those. And from paragraph one through 30, you have act after act after act of intentional conduct. There's no allegation of unexpected, unintended injury. This is a claim purely and solely of intentional conduct. And those are the facts alleged. Now, how do you account for the Servidone construction case in the New York Court of Appeals, which says an insurer may refuse to defend, and now I'm quoting, only if it could, only if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the policy. And the Servidone case, which is still good law in New York, in fact, it was reaffirmed by the K2, second K2 case in the Court of Appeals. The Servidone case stands as the rule in New York on that issue. But the Servidone doesn't suggest that the court should ignore the factual allegations. You asked the question of my colleague, which is more important, if you will, the factual allegations or the allegations of theory. And New York courts have said time and time again that shotgun allegations of theory do not take away from the factual allegations. And in fact, this court, most of those cases are ones that go against the insurance company. They're ones that say you don't lose your coverage because you throw in an allegation of willfully. Oh, no. To the contrary, Your Honor, most of those cases go the other way. They are cases where, for example, someone says he beat me over the head with a baseball bat time and time again, but it wasn't, it was negligent. Or McGavro, which is a sexual abuse case, he touched, he fondled, he did horrible things, but he didn't mean to hurt. And the courts have said shotgun allegations don't create coverage if the factual allegations established there isn't. And this court said that. Those sound like cases in which the complaint is being artfully drafted in order to get insurance coverage. Indeed they were. Indeed they were. This court in the Brooklyn Law School versus Aetna case said it very well. Same situation. The court said, well, there are allegations in the complaint, the school argued, that if proven could result in the insurer's liability for damages. And the court said for intentional conduct, proving unintentional injury. And this court said we can see no reason why the court should have imagined what is not in the complaint in order to find liability, which was not intended. Here, without question, every single factual allegation alleges intentional conduct. There is not a single allegation to the contrary. So do you certify this case, Your Honor? You asked the question. I don't think it's necessary because this case falls within that solid body of New York case law that says we'd look at the allegations in the complaint to create coverage. The only time you look outside the complaint, the Fitzgibbon's case talks about that, is if you know of facts, if you know of true facts that would take the case into a covered claim. This is not a situation. Well, do we have to look outside the complaint? You know, I guess the question is, in the case of the classic disparate treatment case, the intent that's required is an intent to discriminate. You have to be saying, in effect, we don't want your kind around here. And in the classic accommodation case, the employer usually, here a place of public accommodation, is saying something more like, sure, you can come here, but you have to come here on the same terms as everybody else, and we, for whatever reason, don't think it's necessary or appropriate or affordable to give you an accommodation. Right? And so those are quite different things. And while I understand that the complaint here, like many complaints, is loading up on these are bad guys, the actual factual allegations certainly give rise to a potential inference that if all those facts are true and the conversation went exactly that way, a jury could reasonably find intentional discrimination. But it's not clear to me that a jury would have to find that, and if the jury found something short of that and just said, well, but she was asking for something reasonable, and you made a mistake in not providing it, wouldn't the psychiatric center still be liable? It may be, but that isn't a theory alleged. Now we're looking at the theory, you see. I understand, but those aren't the facts alleged. The facts alleged all point to the public accommodation provider doing something intentionally designed to discriminate. There is no — now maybe if she had a different lawyer and had a different complaint and it'd be a different theory, we'd be in a different place. But we can't change the complaint. This is the complaint we have. These are the allegations we have. This is the allegation, paragraph 30 says, this was intentional. This ain't an accident. We're not kidding around. This is what was done on purpose. But what if the accommodation requested in the underlying case was obviously unreasonable? And in that case, the insurer is — you know, there's an allegation of intentional failure to accommodate, but is it acting well within the law of accommodation? I'm sorry, Your Honor, I don't understand the question you're asking. In a situation where in the underlying complaint the allegation is that there's intentional discrimination, intentional failure to accommodate, but the accommodation sought is obviously unreasonable. No coverage because — under your view, because the intentionality of — That's right. And it may not be any liability either at the end of the day. And in this case, as you know, they found no liability on the part of the — Right. — the psychiatric center. So there are some — that happens sometimes. You have an allegation in a complaint that's outside of coverage. Coverage is declined. The insured then proceeds to try the case, and there's a no — a verdict in the defense's favor because it wasn't discrimination, and everybody goes home. That's not unusual. Well, Cervodone talked about that. In that case, the carrier refused to defend, walked away from the defense. But that happens, sure. You know, if you're sued — if somebody is sued for hitting somebody over the head with a baseball bat, and the carrier declines coverage, and there's a verdict for the defense, that doesn't give them defense costs. Okay. And that's what this is all about. Defense costs, right? Yes, Your Honor. It's all about defense costs. And we're not talking about indemnity, because there's —  There's no indemnity. There's nothing to indemnify. I see. My time has expired. Thank you, counsel. Thank you. Counsel, tell me how come Mrs. Goldman lost below? Oh, I — This is an intentional tort, as we've all discussed. So — It sounds to me like a meritorious case. How did she lose? My understanding — and I wasn't involved in the case at that point — but my understanding is that the key issue, actually, at trial was separate from all of this. It was actually an issue of causation, where there was a question of whether the failure to get — or the denial of certain services was due to the failure — the lack of accommodations, or rather to independent factors that the center could not provide the services that were being requested or did not have the capacity to provide those, for reasons completely apart from any disability conditions. It was more complex than it looks at first glance. My understanding, yes. Yes. I'd just like to briefly address a few things — In the actual trial — this may be beyond your knowledge, and certainly it's beyond the scope of your representation — I'm just wondering, was there a jury instruction about what was necessary to find accommodation — a failure to accommodate? And did that instruction include a need to find intentional discrimination? As to the second part, no, the instruction did not specifically require any need to find intentional conduct. The jury instructions — and I think they're in the record — they were attached to one of the filings, so they're in the — I don't have a citation for you right at this moment, but they were kind of crafted around this causation issue, which was the key issue in dispute, so these issues were not kind of central to — and the jury instructions don't really clearly, in my reading, clearly address that one way or another. I would say, though, however, that the concern that I've been raising is not theoretical. Throughout the litigation of that case, the Goldman case, through motions for summary a failure to accommodate, regardless of any intent or lack of intent, was squarely at issue in the case and was litigated throughout. So it's not just a theoretical issue. It actually happened in this very case. As to the complaint, my colleague said that there's not a single allegation that isn't intentional. I would refer you to our reply brief at pages 3 to 5, where we've laid out what we think are the allegations in the complaint that are more than sufficient to state a cause of action for discrimination by failure to accommodate without any need for any discriminatory intent. And so we think that's enough to show that. And the final issue was, the question was raised about what if a jury had decided to find on this complaint that there was — maybe there was liability just on the basis of insufficient accommodations. And I would go one step further. I think that the plaintiff, on the basis of this complaint, could have chosen to go to trial and rely entirely on the lack of accommodations on this very complaint without ever bringing — even trying to prove the intent. If this plaintiff had decided that my best bet for, you know, succeeding here is to just rely on the fact that they failed to provide sufficient accommodations, and that's enough under the law to state a claim for discrimination. Thank you. Thank you. Thank you.